**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**JOHN H. CIROTA,**

      **Petitioner,**

**v.**                              **Case No.  3:17cv253-LC/CAS**

**JULIE L. JONES,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On April 14, 2017, Petitioner, John H. Cirota, a prisoner in the custody of the Florida Department of Corrections, proceeding pro se under the mailbox rule, filed a petition for writ of habeas corpus with exhibits pursuant to 28 U.S.C. § 2254.  ECF No. 1.  On February 9, 2018, Respondent filed an answer with index to record.  ECF No. 16.  On August 13, 2018, Petitioner filed a reply consisting of five parts.  ECF Nos. 23-27.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the

pleadings and attachments before the Court show that Petitioner is not

entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

On April 15, 2011, Petitioner was charged by Information filed in

Escambia County, Florida, with Count One, lewd or lascivious molestation

of C.P., a child age six, by Defendant age 18 years or older, on March 22,

2011, in violation of section 800.04(5), Florida Statutes; and Count Two,

unlawfully soliciting C.P., age six years, to commit a lewd or lascivious act,

on March 22, 2011, by Defendant age eighteen years or older, in violation

of section 800.04(6), Florida Statutes.  Ex. A at 1.[1]

The State filed a notice of intent to offer hearsay under section

90.803(23), Florida Statutes, and notice of intent to submit Williams Rule

evidence of other crimes, wrongs, or acts, pursuant to section 90.404(2)(b),

Florida Statutes.  Ex. A at 15-17.  Hearing was held September 30, 2011,

on the Williams Rule evidence.  Ex. A at 19-146.  A second Williams Rule

hearing was reconvened on October 6, 2011, after discovery of some 1998

transcripts pertaining to the Williams Rule witnesses. Ex. B at 184-204.

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through TT submitted with Respondent's answer.  *See* ECF No. 16.

The trial court allowed two Williams Rule witnesses to testify to Petitioner's prior acts.  Ex. B at 197-98.

Jury trial was held on October 3 and 7, 2011, and Petitioner was found guilty as charged on both counts.  Ex. B at 215.  Petitioner was sentenced to life in prison on Count One and a concurrent term of fifteen years on Count Two, with credit for 195 days served.  Ex. B at 220-27. Petitioner appealed to the State First District Court of Appeal, which affirmed per curiam without a written opinion on February 4, 2013.[2]  Ex. K. The mandate was issued on February 20, 2013.  Ex. M.  *See* Cirota v. State, 106 So. 3d 931 (Fla. 1st DCA 2013) (table).

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on July 9, 2013, a first amended motion on October 3, 2013, and a second amended motion on December 30, 2013.[3]  Ex. N at 1-44, 50-95, and 98-144.  The post-conviction court denied

---

[2] The issues raised on direct appeal were (1) trial court erred in allowing Williams Rule evidence of collateral crimes; (2) trial court erred in failing to reconvene the hearing on the Williams Rule evidence to permit defense counsel to cross-examine the witnesses with newly discovered evidence; (3) trial court erred in allowing the victim's father to testify that he beat up Petitioner because he had touched his daughter; and (4) trial court fundamentally erred in entering judgment on Count Two because the evidence affirmatively showed the victim did not perform a lewd or lascivious act by pulling down her pants at the direction of the defendant.  Ex. I.

[3] The claims in his second amended post-conviction motion were (1) ineffective assistance of counsel (IAC) in failing to file a notice of expiration of the speedy trial period and for discharge; (2) violation of double jeopardy; (3) IAC for failure to strike jurors for cause; (4) IAC for inadequate argument on motion for judgment of acquittal;

the second amended motion on March 4, 2014.  Ex. N at 145-219.

Petitioner appealed, and the district court of appeal affirmed per curiam

without discussion on August 6, 2014.  Ex. Q.  The mandate was issued on

October 3, 2014.  Ex. S.  *See* Cirota v. State, 146 So. 3d 1174 (Fla. 1st

DCA 2014) (table).

Petitioner filed a "Petition For Writ of Habeas Corpus Alleging

Ineffective Assistance of Appellate Counsel" in the State First District Court

of Appeal on June 9, 2014, arguing that counsel should have raised a

fundamental error claim for violation of the speedy trial provisions of Florida

Rule of Criminal Procedure 3.191(a).  Ex. T.  The petition was denied "on

the merits" on July 3, 2014.  Ex. U.  *See* Cirota v. State, 146 So. 3d 1174

(Fla. 1st DCA 2014) (table).

On August 27, 2014, Petitioner filed a "Notice of Void Judgment and

Demand for Discharge" in the trial court based on the speedy trial issue.

Ex. W at 1-4.  On December 1, 2014, Petitioner filed a "Supplemental

---

(5) IAC for failure to request instruction on lesser offense of lewd and lascivious
conduct; (6) evidence failed to prove defendant's age, which was element of the crimes;
(7) IAC for failure to obtain medical report; (8) IAC for failure to call doctor who
examined the victim; (9) sentence is illegal for lack of special jury findings on
defendant's and victim's ages and the touching that occurred; (10) sentence is
vindictive, being based on prior convictions; (11) life sentence is not proportional to facts
of crime; (12) IAC for failure to investigate and to impeach T.B. and B.R. with 1998
deposition; (13) IAC for failure to file motion to dismiss where defendant was convicted
of crime not charged; (14) IAC for failure to object to the jury instruction on lewd or
lascivious molestation; and (15) cumulative IAC error.  Ex. N at 98-144.

Postconviction Claim," raising the additional claim that he should be discharged from his conviction because, when he was first taken into custody, he was not apprised of his <u>Miranda</u> rights. Ex. W at 8-14. On January 21, 2015, the circuit court denied his notice of void judgment and supplemental claim by "Order Denying Postconviction Relief." Ex. W at 16-17. The court found that the claims were successive post-conviction claims that were procedurally barred. *Id.* at 16. Petitioner appealed to the First District Court of Appeal, which affirmed per curiam without discussion on April 23, 2015. Ex. Z. The mandate was issued on June 24, 2015. *See* <u>Cirota v. State</u>, 166 So. 3d 768 (Fla. 1st DCA 2015) (table).

On April 28, 2015, Petitioner filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). Ex. CC at 1-10. Petitioner claimed that he received life in prison even though the scoresheet only called for 61.5 months in prison, and the longer sentence could not be imposed without additional factfinding by the jury. The State court denied the motion on July 20, 2015, concluding that the court could impose a sentence up to the statutory maximum without any additional factfinding or written findings. Ex. CC at 11-16. Petitioner appealed to the district court of appeal, which affirmed per curiam without opinion on March

24, 2016.  Ex. FF.  The mandate was issued on June 6, 2016.  Ex. HH.
*See* Cirota v. State, 190 So. 3d 636 (Fla. 1st DCA 2016) (table).

On August 12, 2015, Petitioner filed a petition for writ of habeas
corpus in the circuit court.  Ex. II at 1-14.  He claimed a violation of due
process and equal protection based on his allegation that he was not given
his Miranda rights when he was first taken into custody, where he made an
"inconsistent" statement during an interrogation.  He also claimed that he
was denied due process because he was tried outside the speedy trial time
requirements of Florida Rule of Criminal Procedure. 3.191.  The circuit
court denied the petition on December 21, 2015.  Ex. II at 15-16.  Petitioner
appealed, and the district court of appeal affirmed per curiam on July 13,
2016.  Ex. LL.  The mandate was issued on September 7, 2016.  *See*
Cirota v. State, 197 So. 3d 92 (Fla. 1st DCA 2016) (mem.)  Petitioner's
Notice to Invoke Discretionary Jurisdiction seeking review in the Florida
Supreme Court was denied on November 8, 2016.  Ex. TT.

On April 14, 2017, Petitioner filed his petition for writ of habeas
corpus in this Court pursuant to 28 U.S.C. § 2254 raising the following
grounds for relief:

(1) Trial court improperly allowed Williams Rule evidence not
sufficiently similar to be relevant and counsel failed to
investigate a witness's prior inconsistent statements, in violation

of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.  ECF No. 1 at 4.

(2) Trial counsel rendered ineffective assistance prior to trial by failing to ask for a continuance to have a rehearing on the Williams Rule evidence, in violation of the Federal Constitution. ECF No. 1 at 5.

(3) Trial counsel rendered ineffective assistance for allowing the victim's father's statement that he beat up Petitioner that night because he touched his daughter, in violation of the Federal Constitution.  ECF No. 1 at 6.

(4) Trial counsel rendered ineffective assistance for allowing the State to not prove that the child committed a lewd and lascivious act, in violation of the Federal Constitution.  ECF No. 1 at 6.

(5) Trial counsel rendered ineffective assistance by allowing the trial court to convict and sentence Petitioner without jurisdiction due to expiration of Petitioner's speedy trial rights, in violation of his Constitutional rights.  ECF No. 1 at 7.

(6) Trial counsel rendered ineffective assistance for failing to strike three jurors for cause, in violation of Petitioner's Federal Constitutional right to a fair and impartial jury.  ECF No. 1 at 8.

(7) Trial counsel rendered ineffective assistance for failing to adequately argue the evidence was not sufficient on a motion for judgment of acquittal, in violation of his Federal Constitutional rights.  ECF No. 1 at 9.

(8) The evidence was insufficient to prove Petitioner's age, which was an element of the offenses charged, in violation of his Federal Constitutional right to a fair trial. ECF No. 1 at 10.

(9) Trial counsel rendered ineffective assistance for failing to obtain a medical report from Sacred Heart Hospital, in violation of Petitioner's Federal Constitutional rights.  ECF No. 1 at 11.

(10) Trial counsel rendered ineffective assistance for failing to present the testimony of the doctor who examined the child at Sacred Heart Hospital, in violation of Petitioner's Federal Constitutional rights.  ECF No. 1 at 12.

(11) The trial court committed error in sentencing, by adding victim injury points without jury findings of fact, in violation of Petitioner's Federal Constitutional rights.  ECF No. 1 at 13.

(12) The trial court imposed a vindictive sentence based on ten-year-old convictions, in violation of his Federal Constitutional rights.  ECF No. 1 at 14.

(13)  The trial court committed constitutional error by imposing a sentence that was not proportional to the crime, which involved no physical injury or skin to skin contact, in violation of the Eighth Amendment to the United States Constitution.  ECF No. 1 at 15.

(14) Trial counsel rendered ineffective assistance by failing to investigate Williams Rule witnesses prior to trial and failing to impeach their testimony, thus failing to show Petitioner's actual innocence, in violation of his Federal Constitutional rights.  ECF No. 1 at 16.

(15) The trial court erred in denying Petitioner's petition for writ of habeas corpus.  ECF No. 1 at 17.

(16) The trial court erred in treating Petitioner's Notice of Void Judgment and Demand for Discharge as successive and denying it without a hearing.  ECF No. 1 at 18.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances.  Section 2254(d) provides in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011).  The Court stated:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already

rejected in state proceedings. . . .  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no further.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' "  Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

   "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim."  Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim."  Preston v. Sec'y, Fla. Dep't of

Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416

F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim

in each appropriate state court in order to alert the state courts to the

federal nature of the claim.  Duncan v. Henry, 513 U.S. 364, 365 (1995);

Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526

U.S. 838, 845 (1999).  The State must have been provided the

" 'opportunity to pass upon and correct' alleged violations of its prisoners'

federal rights."  Henry, 513 U.S. at 365) (quoting Picard, 404 U.S. at 275

(citation omitted)).  "This rule of comity reduces friction between the state

and federal court systems by avoiding the 'unseem[liness]' of a federal

district court's overturning a state court conviction without the state courts

having had an opportunity to correct the constitutional violation in the first

instance."  O'Sullivan, 526 U.S. at 845; see also Picard, 404 U.S. at 275 ("If

the exhaustion doctrine is to prevent 'unnecessary conflict between courts

equally bound to guard and protect rights secured by the Constitution,' it is

not sufficient merely that the federal habeas applicant has been through the

state courts." (citation omitted)).

In regard to claims of ineffectiveness of trial counsel, the Petitioner

must have presented those claims in state court " 'such that a reasonable

reader would understand each claim's particular legal basis and factual

foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007)

(citing McNair, 416 F.3d at 1302).

In order to obtain review where a claim is unexhausted and, thus,

procedurally defaulted, the Petitioner must show cause for the default and

prejudice resulting therefrom or a fundamental miscarriage of justice.

Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993).  In order to demonstrate

cause, Petitioner must show that an "external impediment, whether it be

governmental interference or the reasonable unavailability of the factual

basis for the claim, must have prevented petitioner from raising the claim."

Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477

U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497

(1991) (emphasizing that the external impediment must have prevented the

petitioner from raising the claim).  A federal court may grant a habeas

petition on a procedurally defaulted claim without a showing of cause or

prejudice if necessary to correct a fundamental miscarriage of justice.

Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to

satisfy the miscarriage of justice exception, the Petitioner must show that a

constitutional violation has occurred that "probably resulted in a conviction

of one who is actually innocent"—that it is more likely than not that no

reasonable juror would have convicted him—which is a stronger showing

than is necessary to establish prejudice.  *See* <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995).  This standard "thus ensures that petitioner's case is truly 'extraordinary.' " *Id.* (citing <u>McCleskey</u>, 499 U.S. at 494).  Such a case is "extremely rare."  <u>Schlup</u>, 513 U.S. at 324.

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  <u>Pinholster</u>, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  *See also* <u>Swarthout v. Cooke</u>, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting <u>Engle v. Isaac</u>, 456 U.S. 107, 121, n.21 (1982))).

Further, under § 2254(d), federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed

by the state trial court, but not by them."  Marshall v. Lonberger, 459 U.S.

422, 434 (1983).  "Determining the credibility of witnesses is the province

and function of the state courts, not a federal court engaging in habeas

review."  Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir.

2011).  Credibility and demeanor of a witness are considered to be

questions of fact entitled to a presumption of correctness under the AEDPA

and the Petitioner has the burden to overcome the presumption by clear

and convincing evidence.  *Id.* at 845.

  For claims of ineffective assistance of counsel, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is

"strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."

Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at

690).  Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct.  *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' "  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Mirzayance, 556 U.S. at 123.  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*  Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth

Amendment.  Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs.  <u>Strickland</u>, 466 U.S. at 697.

## Ground 1: Williams Rule Evidence

Petitioner contends first that the trial court erred in allowing Williams Rule evidence that was not sufficiently similar to be relevant and admissible, violating his rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.[4]  ECF No. 1 at 4.  He also argues that defense counsel did not properly investigate the Williams Rule testimony of T.B. (also referred to as T.S.), and that counsel failed to properly investigate the prior inconsistent statements of B.R. (also referred to as B.M.).  ECF No. 24-4 at 1.

At trial, the victim's mother testified that she lived with her husband, mother, son, and daughter, C.P.  On the afternoon and night in question, Petitioner, a friend of her mother, was visiting the home.  Ex. C at 166-68.  Her daughter was put to bed around 8 p.m., and Petitioner was in the living

---

[4] <u>Williams v. State</u>, 110 So. 2d 654 (Fla. 1959).  The "Williams rule" is codified at section 90.404(2), Florida Statutes (2005). This rule allows introduction of similar fact evidence of other crimes or acts by the defendant that are relevant to prove a material matter in the prosecution.  Section 90.404(2)(b)1 provides that evidence of the defendant's commission of other acts of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant.  The court must engage in a review, however, to determine if the probative value of the evidence of prior molestations is substantially outweighed by the danger of unfair prejudice.  <u>McLean v. State</u>, 934 So. 2d 1248, 1261-62 (Fla. 2006).

room.  *Id.* at 168.  C.P.'s father testified that he had gotten a bowl of cereal and when he returned the bowl to the kitchen, he decided to check on C.P. Ex. C at 135.  He walked back to her room and found Petitioner standing in C.P.'s doorway and C.P. was pulling up her pants very quickly.  *Id.*  She appeared frightened.  *Id.* at 136.  After Petitioner walked away, C.P. told him Petitioner had her pull down her pants.  *Id.* at 137.  Her father then grabbed a baseball bat and went after Petitioner.  *Id.*

The victim, C.P., testified that Petitioner came to her room after she went to bed, but was not asleep.  Ex. D at 201.  He told her to get up, which she did, and he told her to pull down her pajama pants and panties, which she did.  *Id.* at 202.  He told her to walk over to him, which she did, and he bent down and touched her "tutu" with two fingers.  *Id.* at 202-03.  She described her "tutu" as her "private place" where she goes to the bathroom "number one."  *Id.* at 204.  After her father came in the room as she was pulling up her pants, he asked what happened, to which she responded that Petitioner told her to pull her pants down.  *Id.* at 204-05.

Pursuant to two Williams Rule hearings held prior to trial, the court allowed T.B. and B.R. to testify over defense objection.  T.B. was allowed to testify that nineteen years prior to the charged crime, when T.B. was age eight and Petitioner was a neighbor, he began touching her digitally in her

vaginal area and continued to do so numerous times.  Ex. D at 275-78.
She said that during those incidents, he also exposed his genitals.  *Id.* at
276-78. T.B. testified that just after a birthday party/sleepover at which
Petitioner was present, she saw Petitioner under a blanket with her
younger stepsister, who was crying.  T.B. said she took her sister into the
bedroom and got into bed, but Petitioner came in and put his foot up on the
bed and played with his penis.  Ex. D at 283-86.  B.R., step-sister to T.B.,
testified at trial that when she was seven or eight years old, she was at the
birthday party where Petitioner pulled up her nightgown, where her panties
were exposed, and touched her on her upper thigh by her panty line.  Ex. at
315.

Petitioner contended on appeal that the prior acts testified to by T. B.
were too remote in time and not sufficiently similar to the single occurrence
charged in the instant case to be of sufficient relevance to outweigh the
unfair prejudice.  Ex. I at 30.  As for the testimony of B.R., Petitioner
contended on appeal that the acts against B.R. were not sufficiently similar
to the charged crime because it did not involve digital vaginal touching but
involved only touching of the thigh or hip area.  *Id.* at 32

Petitioner also argued on appeal that the acts were too remote in time
and that the probative value was outweighed by unfair prejudice.  Ex. I at

32-33.  Petitioner cited Florida statutes and Florida case law to support these appellate claims.[5]  Ex. I at 28-34.  The state district court of appeal affirmed without discussion.

Under Florida law, for the testimony of prior acts to be admissible, the trial court should consider the similarity of the prior acts to the charged acts, including age and gender of the victims, the location where the acts occurred, and the manner in which the acts were committed; the closeness in time to the charged acts; the frequency of the prior acts; and the presence or lack of intervening circumstances.  McLean v. State, 934 So. 2d 1248, 1262 (Fla. 2006).  The trial court should also consider other factors unique to the case.  *Id.*  "However, the fact that the charged and collateral crimes are not exactly the same 'does not preclude admission of collateral crime evidence and, indeed, would erect an almost impossible standard of admissibility.' "  Jones v. State, 212 So. 3d 321, 337 (Fla. 2017) (quoting  Chandler v. State, 702 So. 2d 186, 194 (Fla. 1997) (citing Gore v. State, 599 So. 2d 978, 984 (Fla. 1992) (observing that the Court has "never required the collateral crime to be absolutely identical to the crime

---

[5] Petitioner raised this claim regarding admission of Williams Rule testimony that was not sufficiently similar or timely based only on state law in his direct appeal. Nevertheless, the Respondent concedes that Petitioner has exhausted his federal claim in state court.  ECF No. 16 at 20.

charged"))).  Where "the common points . . . may not be sufficiently unique or unusual when considered individually, they [may] establish a sufficiently unique pattern of criminal activity when all of the common points are considered together."  Jones, 212 So. 3d at 338 (quoting Gore, 599 So.2d at 984).

Regardless of any failure to exhaust this claim due to Petitioner's failure to raise any federal constitutional grounds in the state court, this aspect of Ground 1 lacks merit and should be denied.  The prior collateral acts testified to by T.B. and B.R. were sufficiently similar in that each incident involved very young girls, as did the charged crimes; the victim in the instant case knew Petitioner as a neighbor, as did T.B. and B.R.; most of the incidents testified to took place in the girls' residences; and the acts involved touching or attempting to touch the girls' vaginal areas.  These features of similarity meet the similarity requirements of McLean.  Further, the collateral acts testimony was not lengthy and was not made a focus of the trial.  Moreover, the trial court instructed the jury before each Williams Rule witness and at the conclusion of the case as follows:

> **THE COURT:** . . . .  The evidence you are about to receive . . . concerning evidence of other crimes, wrongs or acts allegedly committed by the defendant, will be considered by you only insofar as they are relevant.  The defendant is not on trial for a crime, wrong or act that is not included in the information.

Ex. D at 270 (regarding witness T.B./T.S.); Ex. D at 309 (regarding witness B.R./B.M); Ex. D at 389 (jury instructions).  Even if Petitioner's claim could be construed as one alleging a violation of due process, in light of this record, no violation of due process or fundamental unfairness has been demonstrated.  See United States ex rel. Clark v. Fike, 538 F.2d 750, 757 (7th Cir. 1976) (explaining that admissibility of evidence in state courts is a matter of state law; thus, the evidentiary questions are not subject to federal review under § 2254 unless they deny of a constitutional right or result in a denial of fundamental fairness), *cert. denied,* 429 U.S. 1064 (1977)).

Petitioner has not shown that the adjudication by the state court finding this claim lacked merit was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  This aspect of Ground 1 should be denied.

In the second part of this ground, Petitioner appears to argue that trial counsel failed to adequately investigate the Williams Rule testimony and

the inconsistent statements by B.R.[6]  As discussed in Ground 14, *infra*, trial counsel obtained copies of 1998 transcripts in which T.B. and B.R. testified concerning a criminal case against Petitioner.  Trial counsel attempted to impeach T.B. with her prior testimony concerning incidents that occurred at the birthday party.  He also impeached her testimony that Petitioner was a neighbor when she was eight years old in 1992, when he started molesting her.  Counsel brought out the fact that in 1992, Petitioner did not live in that neighborhood in 1992.  Ex. D at 288.  During cross-examination, defense counsel brought out the fact that T.B. never told the authorities about the 1998 molestation until 2011.  Ex. D at 291.  Counsel attempted to impeach her testimony about the night of the birthday party when Petitioner tried to molest her stepsister.  He asked T.B. about her testimony from the 1998 transcript indicating that she was outside with a number of other children and teenagers when Petitioner came out and told her to get inside the house and stop drinking alcohol.  *Id.* at 292-93.

Trial counsel also attempted to impeach the testimony of B.R. with her 1998 deposition in which she testified at one point that Petitioner did not touch her at the birthday party.  Ex. D at 317.  B.R. testified she did not

---

[6] Petitioner raised the ineffective assistance of counsel portion of Ground One in his Second Amended Rule 3.850 motion.  *See* Ex. N at 132-35.

remember saying that, but she admitted it was in the transcript. It was brought out on redirect that, after she testified in 1998 that Petitioner did not touch her, she later testified he touched her upper leg. *Id.* at 323.

Thus, trial counsel did use prior 1998 testimony of the two Williams Rule witnesses to attempt to impeach them at trial.[7] Petitioner does not state what other evidence trial counsel could have discovered by investigation that would have further impeached the Williams Rule witnesses. He has not demonstrated a reasonable probability that any other impeachment or facts that could have been discovered by trial counsel concerning the allegations of T.B. and B.R. would have resulted in a lesser verdict—a reasonable probability being one sufficient to undermine the Court's confidence in the outcome. *See* <u>Strickland</u>, 466 U.S. at 694. Habeas relief on this portion of Petitioner's Ground 1 should also be denied.

Petitioner has failed to show that the adjudication of this claim, to the extent it was raised below and exhausted for federal habeas purposes, resulted in a decision that was contrary to or an unreasonable application

---

[7] This impeachment via prior 1998 testimony was brought to the trial court's attention prior to trial at the second Williams Rule hearing. *See* Ground 14, *infra*, in which Petitioner alleges trial counsel rendered ineffective assistance prior to trial by failing to impeach the Williams Rule witnesses.

of established federal law or an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding. 28 U.S.C.

§ 2254(d). Habeas relief should be denied.

### Ground 2: Failure to Move to Continue Williams Rule Hearing

Petitioner contends in Ground 2 that trial counsel rendered ineffective

assistance by failing to ask for a continuance of the Williams Rule hearing

prior to trial. ECF No. 1 at 5. He argues that if counsel had requested and

been granted a continuance, he could have further investigated and more

effectively impeached the Williams Rule witnesses' testimony of acts that

occurred many years before trial. *Id.*

Petitioner alleges in his petition that he raised this ground in his post-

conviction motion. ECF No. 1 at 5. In his reply, he suggests that he raised

this claim in his direct appeal.[8] ECF No. 23 at 20. Respondent contends

that the claim is not exhausted because it was not raised in the Second

Amended Motion for Postconviction Relief filed in state court. ECF No. 16

---

[8] The pertinent claim raised on direct appeal was trial court error in failing to
reconvene the Williams Rule hearing after discovery of a deposition of B.M. from a 1998
case. The record shows that the trial court did, in fact, reconvene the Williams Rule
hearing after the prior 1998 transcripts of testimony of the Williams Rule witnesses was
discovered. A second Williams Rule hearing was reconvened on October 6, 2011. Ex.
B at 184-204. The impeachment material in those transcripts was brought to the trial
judge's attention in a second hearing before her final ruling on the admissibility of the
Williams Rule testimony.

at 27.  Ex. I at 35.  However, a review of the motion discloses a brief reference to trial counsel failing to request a continuance of the Williams Rule hearing in order to investigate the Williams Rule evidence.  *See* Ex. N at 134 (claim Twelve).  The main contention in post-conviction claim Twelve was that trial counsel failed to impeach the Williams Rule witnesses.  In denying Petitioner's post-conviction claim Twelve, the post-conviction court did not address the issue of failure to request a continuance, but addressed only that portion of the claim that counsel failed to adequately impeach the Williams Rule witnesses.  *See* Ex. N at 154-56; *see* Ground 14 *infra*.

On appeal from denial of relief of Petitioner's post-conviction claim Twelve, Petitioner argued that the post-conviction court erred in denying his claim because the trial court allowed impeachable and false statements by the Williams Rule witnesses at trial where "evidence was brought up to show impeachable grounds and false statements."  Ex. O at 7.  Petitioner did not expressly argue that trial counsel was ineffective for failing to move for a continuance of the Williams Rule hearing.  *See* Ex. O at 7-8.  The state district court of appeal affirmed without discussion.  Ex. Q

In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal

claim." Preston., 785 F.3d at 457 (quoting McNair, 416 F.3d at 1302).

Petitioner must "fairly present" his claim in each appropriate state court in

order to alert the state courts to the federal nature of the claim.  Henry, 513

U.S. at 365 (emphasis added); *see also* Picard, 404 U.S. at 275;

O'Sullivan, 526 U.S. at 845.  Petitioner did not provide each state court with

the opportunity to pass upon the specific claim alleged in this ground.

Although a federal court may grant a habeas petition on a

procedurally defaulted claim without a showing of cause or prejudice if

necessary to correct a fundamental miscarriage of justice, Henderson, 353

F.3d at 892, Petitioner cannot satisfy this exception.  He has not alleged or

shown that an "external impediment, whether it be governmental

interference or the reasonable unavailability of the factual basis for the

claim, must have prevented petitioner from raising the claim." Alderman,

22 F.3d at 1551.  Nor can he show that a constitutional violation has

occurred that "probably resulted in a conviction of one who is actually

innocent.  *See* Schlup, 513 U.S. at 327.  Even if the Williams Rule

witnesses had been excluded or more thoroughly impeached at trial, the

testimony of the victim C.P. and the other witnesses would still have been

presented to the jury to prove the charges in the instant case.

Regardless of Petitioner's procedural default, the claim should be denied as meritless. The factual matters that he cites in his § 2254 petition and in the post-conviction court, which he contends would have completely impeached the Williams Rule witnesses' testimony, were brought before the judge in the second Williams Rule hearing before trial and during the witnesses' testimony at trial. The jury was the final arbiter of the credibility of those witnesses. Petitioner has not identified what further facts could have been discovered if counsel had obtained a continuance of the Williams Rule hearing to investigate further. Petitioner has not shown a reasonable probability that, but for the alleged error of counsel in failing to request a continuance of the Williams Rule hearing, the result of the trial would have been different—a reasonable probability being one sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694.

Because prejudice has not been shown, the claim should be denied. *See* Strickland, 466 U.S. at 697 (explaining that because deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment, the court need not address both prongs if the petitioner fails to prove one of the prongs). Ground 2 should be denied.

## Ground 3: Father's Testimony

Petitioner next contends that trial counsel rendered ineffective assistance for failing to object to testimony by the victim's father that he beat up Petitioner because Petitioner had touched his daughter.  ECF No. 1 at 6.  At trial, the victim's father testified that on March 22, 2011, Petitioner was a guest in his home.  The father testified that after C.P. was given a bath and gotten ready for bed, the father went to check on her in her room and saw Petitioner standing in her doorway.  His daughter, who was two to three feet away from Petitioner, was quickly pulling up her pants.  Ex. C at 132-35.  The father testified that his daughter appeared frightened and the child reported to him that Petitioner had told her to pull her pants down.  The father then found a bat and hit Petitioner a number of times.  *Id.* at 137-38.  When asked why he beat up Petitioner, the father testified "[b]ecause he touched my daughter."  Defense counsel did object that this testimony was speculative, but that objection was overruled.  *Id.* at 141.  Petitioner appealed to the state First District Court of Appeal citing error in the trial court's admission of this statement and the court affirmed without discussion.  Ex. I at 37; Ex. K.

Petitioner alleges in his petition that he raised this ineffective assistance claim on direct appeal in state court.  However, the issue raised

on direct appeal was trial court error in allowing the testimony, not a claim of ineffective assistance of counsel.  *See* Ex. I at 34.  No ineffective assistance of counsel claim was raised in the State court concerning failure to object to the father's testimony, thus the claim is procedurally barred. Moreover, had such a claim been raised, it would have been found without merit because counsel did object to the testimony and his objection was overruled.  *See* Ex. C at 140-141.  Thus, regardless of the procedural default, Petitioner cannot demonstrate that counsel was ineffective regarding the testimony of the victim's father.

Moreover, trial courts have sound discretion on issues of admission of evidence.  A court's ruling admission of evidence will not be reversed unless there has been a clear abuse of discretion.  Ray v. State, 755 So. 2d 604, 610 (Fla. 2000).  The State appellate court found no abuse of discretion by the trial court in admitting this testimony.  It should be noted that state evidentiary rulings are rarely the basis for habeas relief since the admission of evidence is a matter within the broad discretion of the trial judge.  Cramer v. Fahner, 683 F.2d 1376, 1385 (7th Cir. 1982), *cert. denied,* 459 U.S. 1016 (1982); United States v. Isaacs, 493 F.2d 1124 (7th Cir. 1974), *cert. denied,* 417 U.S. 976 (1974).  The admissibility of evidence in state courts is a matter of state law; thus, the evidentiary questions are

not subject to federal review under § 2254 unless they result in a denial of a specific constitutional right or the error is of such magnitude as to result in a denial of fundamental fairness.  United States ex rel. Clark v. Fike, 538 F.2d 750, 757 (7th Cir. 1976), *cert. denied,* 429 U.S. 1064 (1977).  The standard for judging whether an evidentiary error constitutes a denial of fundamental fairness is "whether it is 'material in the sense of a crucial, critical, highly significant factor [in the outcome of the case].' "  Cramer, 683 F.2d at 1385 (quoting Lawrence v. Wainwright, 445 F.2d 281, 282 (5th Cir. 1971).

Trial counsel did object to this testimony, thus was not deficient.  The father's testimony that he beat Petitioner because he touched C.P. did not violate a specific constitutional right and was not of such magnitude that it constituted a denial of fundamental fairness.  That information was before the jury in the testimony of C.P. that Petitioner touched her "tutu," which she described as her privates.  Ground 3 should be denied.

## Ground 4: Solicitation of Lewd or Lascivious Act

Petitioner contends that defense counsel rendered ineffective assistance by not requiring the State to prove that the child victim committed a lewd or lascivious act when Petitioner told her to pull down her pants, as charged in Count 2.  ECF No. 1 at 6-7.  He alleged that he raised

this claim in his direct appeal from conviction and sentence.  *Id.*  However, the claim raised on direct appeal was that the trial court committed fundamental error in entering judgment and sentence on Count Two, solicitation of the child to perform a lewd or lascivious act, because the evidence affirmatively proved that the child's action in pulling down her pants was not lewd or lascivious.  Ex. I at 38.  The claim of fundamental error was brought solely on state law grounds.  The State appellate court found no reversible error and affirmed.  No state adjudication was obtained on the question of whether trial counsel rendered ineffective assistance in regard to Count Two.  Petitioner failed to bring any federal claim in the State courts pertaining to this issue and the claim is therefore procedurally defaulted.  Petitioner has shown no basis on which to excuse the default.

Moreover, regardless of the default, the claim is without merit. Section 800.04(6), Florida Statutes, provides that it is an offense for a person to solicit a person under age 16 to commit a lewd or lascivious act. Petitioner argues that the act of the child pulling down her pants is not, as a matter of law, lewd or lascivious, so Petitioner's solicitation of C.P. to pull down her pants cannot be a crime.  ECF No. 1 at 6-7; Ex. I at 39.  Under Florida law, soliciting a minor to pull down her pants and expose her genitals can qualify as soliciting a lewd or lascivious act.  *See* Kane v.

State, 975 So. 2d 1277, 1280 (Fla. 4th DCA 2008).  Which acts or conduct are lewd or lascivious is a factual issue to be decided on a case by case basis.  Andrews v. State, 130 So. 3d 788, 790 (Fla. 1st DCA 2014) (rejecting the contention that the State would have to prove that asking a minor to disrobe was for a pornographic purpose).

The evidence in this case included testimony that after six-year-old C.P. was directed to and did pull down her pants, 51-year-old Petitioner touched her private area.  In determining if a lewd or lascivious act was solicited, the jury was entitled to consider the totality of these circumstances.  Both the jury and the State district court of appeal found that the statute was violated by Petitioner's solicitation of the six-year-old victim to pull down her pants.  Because the evidence supported the offense alleged in Count Two, trial counsel was not deficient in failing to object to any lack of proof that a lewd or lascivious act was solicited.  Ground 4 is without merit and should be denied.

## **Ground 5: Speedy Trial**

Petitioner contends in this ground that trial counsel rendered ineffective assistance by failing to seek discharge based on expiration of the time for speedy trial, resulting in Defendant being convicted and sentenced without jurisdiction.  ECF No. 1 at 7.  He contends his trial was

held twenty days after the expiration of the time for speedy trial as required by Florida Rule of Criminal Procedure 3.191.  This claim was raised in Petitioner's Second Amended Motion for Postconviction Relief.  Ex. N at 101.  The post-conviction court denied the claim, finding that the claim was insufficiently pled because, although the time for speedy trial under the rule expired on September 11, 2011, and trial was held October 7, 2011, Defendant failed to allege facts showing that the State could not have brought him to trial during the ten-day recapture period under Rule 3.191(p).  Ex. N at 146.  Petitioner appealed, and the state district court of appeal affirmed without discussion.  Ex. Q

Florida Rule of Criminal Procedure 3.191(p)(3) provides in pertinent part: "No later than 5 days from the date of the filing of a notice of expiration of speedy trial time, the court shall hold a hearing on the notice and, unless the court finds that one of the reasons set forth in subdivision (j) exists, shall order that the defendant be brought to trial within 10 days." Under Florida law, in order to show prejudice from counsel's failure to give notice that speedy trial period has expired, a defendant must allege facts showing that the State could not have brought the defendant to trial within the recapture period.  *See, e.g.*, Remak v. State, 142 So. 3d 3, 6 (Fla. 2d DCA 2014), *rev. denied*, 153 So. 3d 908 (Fla. 2014).  Such facts have not

been alleged in the state court or in this court. Thus, Petitioner has not provided any basis to conclude that, but for counsel's failure to file a motion for discharge based on Rule 3.191, he would not have been tried on these charges or that the trial court would have granted a discharge.

As the post-conviction court found, Petitioner has not demonstrated that the State could not have brought him to trial within the ten-day recapture period. In light of the foregoing, and the fact that Petitioner was brought to trial shortly after the date that the speedy trial period expired, Petitioner has not demonstrated prejudice. There is no reasonable probability in light of settled Florida law, that the trial court would have granted the demand for discharge based on failure to provide a trial within the time frame set by the state rule.

Nor has Petitioner demonstrated that defense counsel rendered ineffective assistance *vis a vis* Petitioner's constitutional right to speedy trial. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. Amend. VI. The constitutional right to speedy trial is not measured by a certain number of days but by tests of reasonableness and prejudice. Vermont v. Brillon, 556 U.S. 81, 89-90 (2009). In determining whether the federal right to a speedy trial was violated, courts consider: (1) the length of the delay; (2)

the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *See* <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972). If the State pursued prosecution with reasonable diligence, then the defendant must show actual prejudice to prevail on a Sixth Amendment speedy trial claim. *See* <u>United States v. Harris</u>, 376 F.3d 1282, 1290 (11th Cir. 2004). Actual prejudice has not been alleged or shown.

The trial court's adjudication denying the ineffective assistance of counsel claim is entitled to AEDPA deference. Further, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " <u>Mirzayance</u>, 556 U.S. at 123 (quoting <u>Schriro</u>, 550 U.S. at 473). Because prejudice cannot be demonstrated as required by <u>Strickland</u>, 466 U.S. at 697, Petitioner has not shown that the State courts' adjudication of the claim—finding Petitioner did not demonstrate ineffective assistance in counsel's failure to move for discharge under Florida's speedy trial rule—was unreasonable. Ground 5 should be denied.

### Ground 6: Failure to Challenge Jurors for Cause

Petitioner next contends that trial counsel rendered ineffective assistance by failing to move to strike several jurors for cause. ECF No. 1

at 8.  He raised this claim in his Second Amended Motion for

Postconviction Relief, citing Juror M, Juror O, Juror D.H., Juror C.H., and

Juror B.  Ex. N at 106-07.  Petitioner contended in State court that Juror M

commented that she had a cousin who was arrested for a sexual offense

and she was upset with him.  *Id.* at 107.  He argued that the juror was

biased and could not be rehabilitated.  Petitioner also argued that counsel

should have moved to strike Jurors O, D.H. and C.H. because each

expressed the view that "kids that age do not have the knowledge to make

stuff up."  *Id.*  He also contended that counsel should have moved to strike

Juror B for cause because he could not hear well.  *Id.*

The state post-conviction court denied the claim, noting first that Juror

O was not selected as a juror.  Ex. N at 147.  The court found that Juror M

indicated she could be fair and impartial in spite of the incident with the

abuse by her male cousin (Ex. C at 85); that Juror B had hearing difficulties

but indicated to the court that he could hear (Ex. C at 101, 105); and that

the trial judge repeatedly asked the witnesses to speak up.  Ex. N at 148.

As for Jurors D.H. and C.H., the post-conviction court found that follow up

questions to them elicited responses that there is not 100 percent reliability

that a child is not telling a story.  *Id.* (citing Ex. C at 60-64).  The State court

found that Petitioner failed to allege any facts showing the jurors were

actually biased, and that additional questioning showed they could be fair and impartial.  The State district court of appeal affirmed denial of this claim.

This claim lacks merit and should be denied.  The State court adjudication of this claim has not been shown to be contrary to or an unreasonable application of any federal law or an unreasonable determination in light of the State court record.  No reasonable probability has been demonstrated, measured in terms of sufficiency to undermine confidence in the result, that even if counsel had moved to strike these jurors for cause, that motion would have been granted.  The Florida Supreme Court has held that "where a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased." Carratelli v. State, 961 So. 2d 312, 324 (Fla. 2007).  This showing of actual bias was not made, and no facts are alleged in this Court to meet that requirement.  Further, as the State court noted, Petitioner affirmed to the trial court that he was satisfied with jury selection.  *Id.* (citing Ex. C at 90-91).

Petitioner has not shown entitlement to habeas relief pursuant to § 2254 and this claim should be denied.

## Ground 7: Motion for Judgment of Acquittal

In this claim, Petitioner contends that his trial counsel rendered ineffective assistance by failing to argue in a motion for judgment of acquittal that the evidence was insufficient to support a conviction. ECF No. 1 at 9. He argues in his reply filed in this Court that as to Count 1, for which the victim testified that Petitioner touched her "tutu," trial counsel should have argued that all DNA and biological testing were negative so there was no skin to skin contact, thus no touching as alleged. ECF No. 24-6 at 4.

At trial, C.P. testified that Petitioner came to her room after she went to bed but was not asleep. Ex. D at 201. He told her to get up, which she did, and he told her to pull down her pajama pants and panties, which she did. *Id.* at 202. He told her to walk over to him, which she did, and he bent down and touched her "tutu" with two fingers. *Id.* at 202-03. She described her "tutu" as her "private place" where she goes to the bathroom "number one." *Id.* at 204. At that time, her father came in the room as she was pulling up her pants and asked what happened, to which she responded that Petitioner told her to pull her pants down. *Id.* at 204-05.

The jury heard testimony of C.P.'s mother that on the night of the incident, C.P. was taken to the emergency room at Sacred Heart Hospital

for an examination and no physical findings of abuse were identified.  Ex. C

at 181.  She was directed by the hospital to go the Gulf Coast Kids House

the next morning.  *Id.*

Dr. Carol Sakhon, a pediatrician, testified at trial that she works with

the Child Protection Team at the Gulf Coast Kids House to examine

children who are alleged to have been abused.  Ex. D at 256-57.  She

examined C.P. the day after the incident and learned that C.P. had urinated

before the examination.  *Id.* at 261.  Dr. Sakhon did not expect to obtain

any bodily fluids or DNA based on the information she was provided.  *Id.* at

260, 262.  Because the history given was of fondling, she did not expect to

find indications of trauma.  *Id.* at 263.  She noted that the vaginal introitus

(entry to the vaginal canal) was slightly red with a minimal amount of

discharge.  *Id.*  When asked what that negative examination indicates, she

testified it indicates no obvious trauma, but that does not negate the

allegations, and 50% of cases of sexual battery have a normal exam.  *Id.* at

263-64.  On cross-examination, she agreed that there was no evidence

found of DNA foreign to C.P.  *Id.* at 267-68.  At the conclusion of the State's

case, defense counsel made a general motion for judgment of acquittal

arguing that the State failed to present a *prima facie* showing of the alleged

offenses.  Ex. D at 325.  The motion was denied.  *Id.* at 326.

Case 3:17-cv-00253-LC-CAS   Document 28   Filed 09/20/18   Page 40 of 68

Page **40** of **68**

In his second amended motion for post-conviction relief, Petitioner

contended that trial counsel should have argued on the motion for

judgment of acquittal that all DNA and biological testing showed no skin to

skin contact.  Ex. N at 112.  He argued that if Petitioner had touched C.P.

there would have been DNA evidence.  *Id.*  The post-conviction court

denied the claim, finding that under the evidence presented, absence of

DNA or physical signs of abuse would not prove the offenses did not occur,

and that non-physical evidence such as testimony of the victim is sufficient

to prove the elements of lewd or luscious molestation.  Ex. N a 149 (citing

Guiliano v. State, 46 So. 2d 182, 183 (Fla. 1950) (holding that the child

victim's testimony is sufficient to sustain conviction for lewd, lascivious, or

indecent assault even without corroborating evidence); Wilson v. State, 884

So. 2d 1036, 1037 (Fla. 4th DCA 2004) (finding child victim's testimony of

fondling her genitals to be direct, not circumstantial, evidence).  The State

court found, in pertinent part, that Petitioner failed to show a reasonable

probability that had counsel made a different argument on the motion for

judgment of acquittal, the trial would have resulted in an acquittal.  Ex. N at

149.  The First District Court of Appeal affirmed denial of this claim.  Ex. Q.

Because Petitioner has failed to show the adjudication of the State

court was contrary to or an unreasonable application of federal law as

determined by the Supreme Court, or an unreasonable determination in

light of the evidence, habeas relief on this claim should be denied.

## Ground 8: Petitioner's Age

Petitioner contends that he was deprived of his constitutional rights

under the Fifth, Sixth, and Fourteenth Amendments because the State was

not required to prove Petitioner's age, which was an element of the

offenses charged. ECF No. 1 at 10. He raised this claim in the State court

in his Rule 3.850 motion, and it was denied. Ex. N at 150. The post-

conviction court correctly noted that the claim was barred, as it should have

been raised at trial or on direct appeal;[9] that Petitioner's age was alleged in

the Information and the jury found him guilty as charged; that he stipulated

to his age at trial; and that testimony was presented that the victim was age

---

[9] *See* Insko v. State, 969 So. 2d 992, 1002 (Fla. 2007) (holding that claim that evidence was insufficient to prove age as an element must be presented in a timely challenge in the trial court with two exceptions not applicable here). The United States Supreme Court has held that presenting a claim to the state court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation. *See* Castille v. Peoples, 489 U.S. 346, 351 (1989); *see also* Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994) (observing that a state habeas petitioner who fails to raise a federal constitutional claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default). Precedent holding that a habeas petition may not be used to raise claims that could and should have been brought on direct appeal motion are firmly established and regularly followed in Florida. The Eleventh Circuit has concluded that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds that precludes federal habeas consideration. LeCroy v. Sec'y, Fla. Dep't of Corr., 421 F.3d 1237, 1260 & n.25 (11th Cir. 2005) (citing Whiddon v. Dugger, 894 F.2d 1266, 1267-68 (11th Cir. 1990)).

six at the time of the offenses.  *Id.* (citing Ex. C at 123, 196; Ex. D at 254-

55).  The First District Court of Appeal affirmed denial of the claim.  Ex. Q.

Regardless of any state procedural bar, this claim lacks merit and

should be denied.  Petitioner has failed to show entitlement to federal

habeas relief under § 2254.

## Grounds 9 and 10: Evidence of Examination at Sacred Heart Hospital

Petitioner contends in Ground 9 that defense counsel rendered

ineffective assistance by failing to obtain a medical report from Sacred

Heart Hospital, and that if the jury had seen the report, the outcome of the

trial would have been different.  ECF No. 1 at 11.  He argues in Ground 10

that trial counsel was ineffective for failing to call the physician from Sacred

Heart Hospital to testify concerning the physical examination the victim

received on the night of the incident.  He argues that the medical report and

physician's testimony would have shown the victim had no indication of

physical abuse or vaginal discharge.  These claims were raised in

Petitioner's second amended motion for post-conviction relief in the state

court.  Ex. N at 120, 150.  The post-conviction court denied both claims,

finding that the claim concerning the medical report was conclusory and

insufficiently pled because it failed to identify the evidence and because

absence of findings of physical abuse would not have exonerated Petitioner

at trial.  *Id.* at 150-51.  The court found that the claim concerning calling the

physician to testify was insufficient because such testimony would have

been cumulative and non-exculpatory.  *Id.* at 151.  The state appellate

court affirmed.  Ex. Q.

As noted earlier, the jury heard testimony that the examination

performed at Sacred Heart Hospital disclosed no evidence of physical

abuse and the DNA evidence was negative.  In spite of that evidence of no

physical trauma and no DNA foreign to the child, the jury convicted

Petitioner as charged.  Having the medical reports and physician testimony

to establish facts that were already before the jury would have been

cumulative and, as the postconviction court found, non-exculpatory.  C.P.

testified that Petitioner touched her vaginal area with his fingers.  She

testified it did not hurt.  Ex. D at 204.  The State did not attempt to prove

that the lewd or lascivious molestation physically injured the victim.

Dr. Sakhon testified that in her experience as a physician for the child

protection team, a negative physical examination indicating no obvious

trauma does not negate the allegations, and 50% of cases of sexual battery

have a normal exam.  *Id.* at 263-64.  The victim's testimony of touching,

alone, is direct evidence of Petitioner's actions.  <u>Wilson</u>, 884 So. 2d at

1037.

Even assuming *arguendo* that trial counsel should have presented the medical report and physician's testimony relating to the examination at Sacred Heart Hospital, Petitioner has failed to demonstrate prejudice. He has not shown a reasonable probability that, but for counsel's alleged deficient performance, the result of the trial would have been different—a reasonable probability being one sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 994. Accordingly, Petitioner has not shown entitlement to federal habeas relief under the requirement of § 2254(d). Grounds 9 and 10 should be denied.

## **Ground 11: Sentencing Error**

Petitioner argues that his sentence violated the Fifth and Fourteenth Amendments to the United States Constitution because the trial court added 40 victim injury points for sexual contact without a specific jury finding of fact. ECF No. 1 at 13. He did not raise this victim injury point issue in a motion to correct sentencing error in conjunction with his appeal from conviction and sentence and does not appear to have raised it in any other filing reflected in this record.[10] Regardless of whether Petitioner

---

[10] Petitioner alleges he raised this issue in his motion for post-conviction relief and Respondent does not contest this allegation. Regardless, a review of the Second Amended Motion for Postconviction Relief, Ex. N at 101-44, does not show any claim relating to a sentencing error by inclusion of victim injury points on the score sheet. Petitioner filed a motion to correct sentencing error in the trial court, but that motion made a general argument regarding the requirement for jury factfinding and does not

adequately exhausted this claim on federal grounds in State court, the claim should be denied as without merit.

Petitioner was found guilty as charged of lewd or lascivious molestation by intentionally and unlawfully touching the victim's genitals, genital area, or clothing covering them in a lewd or lascivious manner. Ex. B at 215. The scoresheet includes 40 victim injury points for sexual contact. Ex. CC at 14. Based on all the scoresheet calculations, the lowest permissible sentence for the two crimes for which Petitioner was convicted was 91.5 months. Ex. CC at 16. The maximum sentence, as is stated on the scoresheet, is "up to the statutory maximum for the primary and additional offenses." *Id.* Because the offense of lewd or lascivious molestation was committed on a child under age 12 by a person over the age of 18, the statutory maximum sentence which could be imposed on Petitioner based solely on the jury verdict was life in prison. *See* § 800.04(5)(b), Fla. Stat. (2011) (designating this offense as a life felony punishable as provided in § 775.082(3)(a)4, Fla. Stat. (2011)). Section 775.092(3)(a)4 provides that the offender may receive a term of

_____

address inclusion of victim injury points. Ex. CC. Subsequent to the order denying sentencing error, denial of motion for hearing, and denial of motion for consideration, an appeal was filed but involved imposition of costs and did not address sentencing based on victim injury points or required jury factfinding. *See* Ex. DD, EE, FF.

imprisonment for life.  Thus, the scoring of 40 victim injury points for sexual

contact did not affect the maximum sentence that could be imposed solely

on the basis of the jury verdict.

Moreover, inclusion of victim injury points for sexual contact were

proper under the charges and evidence because sexual contact adhered in

the verdict for lewd or lascivious molestation based on touching.  C.P.

testified that Petitioner touched her vaginal area with his fingers.  Sexual

contact adheres in the verdict for lewd or lascivious molestation under

section 800.04(5) regardless of whether the offender touches the genital

area of the victim or the clothing over it.  *See* Hernandez v. State, 31 So.

3d 873, 880 (Fla. 4th DCA 2010); Altman v. State, 852 So. 2d 870 (Fla. 4th

DCA 2003) (holding that appellant's act of lying on top of the victim with his

clothed genitals pressed against hers and "humping" her constituted sexual

contact for which victim injury points were appropriately scored); Fredette v.

State, 786 So. 2d 27, 28 n.2 (Fla. 5th DCA 2001) (holding that sexual

contact for purposes of victim injury "sex contact" points includes touching

a child's vaginal area, and opined that this would constitute sexual contact

even if the touching was over the child's clothing); Louis v. State, 764 So.

2d 930 (Fla. 4th DCA 2000) (holding that touching the victim's chest

through her shirt, along with touching her stomach and genital area,

involved sexual contact for which victim injury points were properly scored);

State v. Milanes, 762 So. 2d 572, 573 (Fla. 5th DCA 2000) (stating that

"victim injury points can be assessed when the accused is adjudicated

guilty of fondling the victim").

Where conviction is for an offense involving sexual contact that does

not include sexual penetration, the sexual contact must be scored in

accordance with the sentencing points provided under section 921.0024,

for sexual contact regardless of physical injury. *See* § 921.0021(7)(b)2,

Fla. Stat. Section 921.0024(1)(a), Florida Statutes (2011), provides for 40

victim injury points for sexual contact without penetration.

Petitioner has not shown that his constitutional rights were violated by

inclusion of 40 victim injury points for sexual contact on his sentencing

scoresheet without any separate jury finding as to sexual contact. He is not

entitled to federal habeas relief and this ground should be denied.

## **Ground 12: Vindictive Sentence**

In this ground, Petitioner contends that he received a vindictive

sentence in violation of his Due Process and Equal Protection rights. ECF

No. 1 at 14. He argues that the judge "used personal instead of factfinding

by the jury when she imposed sentence upon Petitioner of life" for Count

One and 15 years for Count Two. *Id.* He further explained in his reply filed

in this Court that the sentences were vindictive because the trial court took into consideration past convictions to impose a sentence that was more severe than justified by the offense.  ECF No. 23 at 33.  He also argues in his reply that the judge's consideration of prior convictions in sentencing violated <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and violated due process because the prior convictions for lewd conduct were more than ten years old.

He raised this claim in his second amended post-conviction motion, Ex. N at 126.  The post-conviction court denied the claim, finding that Petitioner failed to allege facts showing vindictive sentencing and stating, "[t]o the extent he is claiming the Court relied on an impermissible sentencing factor, consideration of his prior convictions does not implicate due process concerns."  Ex. N at 152 (citing <u>Abrams v. State</u>, 971 So. 2d 1033, 1035 (Fla. 4th DCA 2008)).  The State appellate court affirmed denial of this post-conviction claim without discussion.  Ex. Q.

At sentencing, the trial court stated the following:

> **THE COURT**: All right, Mr. Cirota, having been found guilty by a jury of your peers and based upon your prior record, although it's not scored on the scoresheet, but based on your prior record[,] on Count 1, which is the lewd or lascivious

> molestation, I am going to adjudicate you guilty and sentence
> you to life in prison, which will be your natural life.[11]

Ex. E at 415. Prior to imposing this sentence, the Court inquired about the

prior convictions and was advised that Petitioner had previously been

designated a sex offender and had several prior convictions that were over

ten years old and, thus, could not be scored on the scoresheet. *Id.* at 409.

Petitioner did not raise this issue in his direct appeal from conviction and

sentencing.

Petitioner has provided no basis to show that he received a vindictive

sentence because he had prior convictions. Moreover, a vindictive

sentence is one that has been increased because the defendant exercised

a constitutional right. *See* North Carolina v. Pearce, 395 U.S. 711, 725

(1969). And, it is Petitioner's burden to show "a reasonable likelihood that

the increase in sentence is the product of actual vindictiveness on the part

of the sentencing authority." Alabama v. Smith, 490 U.S. 794, 799 (1989).

Petitioner has not alleged any facts to demonstrate his sentence was

---

[11] Even though the court stated "natural life," the judgment and sentence states
that he was sentenced to a term of "life imprisonment," which is a separate category
from "natural life" on the sentencing form. Ex. B at 223. A life sentence is a permissible
sentence for the offense under section 800.04(5)(b), Florida Statues (2011), and section
775.082(3)(a)4, Florida Statutes (2011).

increased in retaliation for him exercising a constitutional right or because the trial judge was exercising "actual vindictiveness."

Further, even if Petitioner's prior convictions were considered in reaching his sentence, it was not improper to do so even though the jury did not make any factual findings concerning prior convictions. The United States Supreme Court stated in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury. . . ." Thus, consideration of prior convictions, regardless of the time frame in which they occurred, was not improper. Moreover, because the convictions were for offenses that were relevant to the current offenses, they bore some relevancy to his sentencing.

Even if the trial court's consideration of Petitioner's prior convictions had been improper, harmless error analysis is applicable to such a claim raised in a § 2254 petition. *See* United States v. Nealy, 232 F.3d 825, 829 (11th Cir. 2000) (finding that Apprendi error is subject to harmless error analysis), *cert. denied*, Nealy v. U.S., 122 S. Ct. 552 (2001); Plasencia v. Sec'y, Fla. Dep't of Corr., 606 F. App'x 511, 515 (11th Cir. 2015) (unpublished) (same). Because the trial court's sentencing was authorized to be imposed based on the jury verdict alone, Petitioner has failed to show

that any <u>Apprendi</u> or <u>Blakely</u> violation could have resulted in anything other than harmless error.  The state court's adjudication of this claim on appeal was not contrary to or an unreasonable application of clearly established federal law.  Habeas relief on Ground 12 should be denied.

### Ground 13: Eighth Amendment

Defendant contends that his life sentence for lewd or lascivious molestation of a child under age 12 by a person over age 18 violated the Eighth Amendment proscription against cruel and unusual punishment as disproportionate in light of the manner in which he alleges the crime was committed.  ECF No. 1 at 15.  He alleges, albeit incorrectly, that DNA and biological testing proved there was no skin to skin contact and he was therefore convicted, and sentenced to life, for touching the victim's genital area over her clothing.[12]  *Id.*  This claim was raised in Petitioner's second amended motion for post-conviction relief.  Ex. N at 128.  The state court denied the claim, Ex. N at 152-54, and the state appellate court affirmed.  Ex. Q.

The Eighth Amendment prohibits punishments that are grossly disproportionate to the severity of the crime.  *See, e.g.*, <u>Lockyer v.</u>

---

[12] The testimony supported a finding of skin to skin contact, despite lack of positive DNA or biological testing.  *See* Ex. D at 202-04.

_Andrade_, 538 U.S. 63, 70 (2003).  The Court in _Lockyer_ stated, "[h]owever, the governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle—the "precise contours" of which "are unclear."  _Id._ at 76 (quoting _Harmelin v. Michigan_, 501 U.S. 957, 998 (1992) (Kennedy, J., concurring in part and concurring in judgment)). There has been no " 'clear or consistent path for courts to follow' in applying the highly deferential 'narrow proportionality' analysis."  _Graham v. Florida_, 560 U.S. 48, 87 (2010) (Chief Justice Roberts concurring) (quoting _Lockyer_, 538 U.S. at 72).  Rather, the Court has "emphasized the primacy of the legislature in setting sentences, the variety of legitimate penological schemes, the state-by-state diversity protected by our federal system, and the requirement that review be guided by objective, rather than subjective, factors."  _Id._

In finding the life sentence was not grossly disproportionate to the crime in the instant case, the State court noted the testimony of the six-year-old victim that Petitioner, age 51, told her to pull down her pants and panties and that he touched her on her privates.  Ex. N at 152.  The court also noted that the statute which provides for the life sentence, section 800.04(5), does not distinguish between lewd or lascivious touching of genitals or the genital area either over or under clothing.  _Id._ at 153.  The

post-conviction court stated, "either way, the offense is grave, especially being committed by an adult on a six-year-old child." *Id.* The court related that the Florida Legislature has found that "sexual offenders who prey on children are sexual predators who present an extreme threat to the public safety." Ex. N at 153 (quoting § 775.21(3)(a), Fla. Stat.). The State court concluded, "Clearly, the legislature has decided that lewd and lascivious molestation by an adult of a child under 12 is a grave offense warranting a severe punishment." Ex. N at 154.

Petitioner has not shown that the state court's ruling was an unreasonable application of clearly established federal law as determined by the Supreme Court or an unreasonable determination in light of the evidence. Further, the ruling was in accord with Florida law, in that Florida courts have held that a life sentence for lewd or lascivious molestation of a child by an adult in violation of section 800.04(5) did not constitute a disproportionate sentence. *See, e.g.*, Adaway v. State, 902 So. 2d 746 (Fla. 2005), *cert. denied*, Adaway v. Florida, 126 S. Ct. 436 (2005); Hanf v. State, 182 So. 3d 704, 707 (Fla. 1st DCA 2015), *cert. denied*, Hanf v. Florida, 137 S. Ct. 1578 (2017). In Adaway, the Florida Supreme Court noted that

> [r]esearchers have identified a long list of harms caused by
> child sexual abuse, including fears, anxiety, phobias, sleep and

> eating disturbances, poor self-esteem, depression, self-mutilation, suicide, anger, hostility, aggression, violence, running away, truancy, delinquency, increased vulnerability to revictimization, substance abuse, teenage prostitution, and early pregnancy. . . .  Research has further shown that certain adult psychiatric problems, including eating disorders, personality disorders, and somatization (physical symptoms without medical explanation), can be directly related to child sexual abuse.

902 So. 2d at 751 (internal quotation marks and citations omitted).

In the context of Eighth Amendment challenges, federal courts have shown a level of deference to legislative determinations as to sentencing. *See* <u>Rummel v. Estelle</u>, 445 U.S. 263, 274 (1980).  Petitioner must show that the state court's ruling on the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  <u>Richter</u>, 562 U.S. at 102-03 (citation omitted).  This showing has not been made and federal habeas relief under § 2254 should be denied.

## **<u>Ground 14: Failure to Impeach Williams Rule Witnesses</u>**

Petitioner argues in this ground that his trial counsel rendered ineffective assistance by failing to investigate the two Williams Rule witnesses prior to trial to determine the truth of their proposed testimony and by allowing B.R. (formerly B.M.) to testify to inconsistent statements. ECF No. 1 at 16; 24-9 at 3.  He argues that counsel failed to review the

witnesses' 1998 depositions prior to trial and that, had he done so, he could have impeached B.R. with statements that Petitioner never touched her and statements of T.B. (formerly T.S.) concerning the dates Petitioner moved into the trailer park. ECF No. 24-9 at 4. He argues that if these points of impeachment had been made prior to trial, the trial court would have disallowed their testimony and the outcome of the trial would have been different. ECF No. 25.

The claim was raised in State court in his second amended motion for post-conviction relief, although the claim related primarily to trial counsel's alleged failure to impeach the witnesses at trial, rather than prior to trial. Ex. N at 132. The post-conviction court denied the claim, concluding that Petitioner failed to allege how trial counsel failed to impeach T.B. with her 1998 testimony relating to the night of her fourteenth birthday party and failed to allege how a charging information would show Petitioner was never convicted of crimes against T.B., as Petitioner contended. Ex. N at 155. The court also concluded that even if Petitioner was never convicted of crimes against T.B., that would not have prevented her testifying to Petitioner's prior conduct against her under the Williams rule. *Id.* (citing Audano v. State, 641 So. 2d 1356, 1359 (Fla. 2d DCA 1994) (holding a

conviction is not required for admission of evidence of other crimes).  The
State appellate court affirmed denial of the claim.

Prior to trial, the court held a hearing on September 30, 2011, to
determine if the Williams Rule witnesses would be allowed to testify.  At
that hearing, T.B. testified that when she was age 8 or 9, Petitioner would
touch her private area and expose his penis through the leg of his shorts.
Ex. N at 90-96.  She testified that at her fourteenth birthday party, Petitioner
was under a blanket with her younger stepsister, who was crying.  She said
she took her sister into the bedroom and got into bed, but Petitioner came
in and put his foot up on the bed and played with his penis.  *Id.* at 102-04.
A criminal case arose out of this incident and she was a witness in the
case.  *Id.* at 105.  Trial counsel did not attempt to impeach her with her
1998 testimony, which he did not have at that hearing.

Witness B.R., stepsister to T.B., testified at that first Williams Rule
hearing that she was 7 or 8 when she attended the birthday party at her
father's house where Petitioner was present.  Ex. A at 109.  She testified
she was playing a card game with Petitioner and he kept lifting up her
nightgown and he touched her upper thigh.  *Id.* at 111-12.  She later went
to court in a criminal case concerning that incident.  Defense counsel asked
B.R. if, when she went to court, she testified that Petitioner never touched

her, to which she responded she could not remember, but only remembered crying while trying to testify. *Id.* at 114. The trial court ruled that both witnesses could testify to Petitioner's prior wrongful acts at his trial.

Shortly after the September 30, 2011, hearing defense counsel located deposition transcripts relating to the 1998 criminal proceedings and was provided a second hearing on the Williams Rule issue. On October 6, 2011, the witnesses were not in attendance, but defense counsel presented information to the judge from the transcripts in which B.R. testified in 1998 that Petitioner did not touch her. Ex. B at 192. It was argued that the transcript showed B.R. also said that Petitioner was pulling up her dress and that made her mad, so she went into another room. The judge then stated, "Well let's give the complete statement. I mean, I just read it. She said no, initially and then there was redirect by John Simon and a refreshing of recollection talking about a touch on the hip." Ex. B at 192. Defense counsel then went on to relate other testimony in the deposition, of which the trial court had a copy.

Defense counsel also argued that T.B.'s testimony at the Williams Rule hearing was different from her 1998 testimony. Ex. B at 196. The trial court ruled that he would still allow T.B. to testify because the differences in

her testimony in 1998 and her testimony at the September 30, 2011, hearing went to weight and not admissibility.  *Id.* at 198.  The judge stated that "the substance of what she says is the same."  *Id.*  The judge advised defense counsel he could use his impeachment evidence at trial when the Williams Rule witnesses testified.  *Id.* at 199.

The record reflects that trial counsel did bring the impeachment evidence to the trial court at the Williams Rule rehearing prior to trial, and the trial court was fully aware of the alleged inconsistencies in the testimony when he allowed the testimony.  Moreover, Petitioner cannot demonstrate that even if trial counsel had impeached the witnesses directly with the 1998 transcripts, rather than bringing the transcripts and impeachment material to the attention of the judge prior to trial, the witnesses would have been excluded and the outcome of the trial would have been different.  Even if the Williams Rule witnesses had been excluded, sufficient evidence was presented at Petitioner's trial to convict him for the two offenses with which he was charged.  Petitioner has not met either prong of Strickland.  Thus, the post-conviction court's denial of this claim was not unreasonable or contrary to established federal law. Petitioner's claim that trial counsel rendered ineffective assistance in failing

to investigate and impeach the Williams Rule witnesses prior to trial is

without merit and should be denied.

### Ground 15: Denial of Writ of Habeas Corpus in Circuit Court

Petitioner contends that the trial court's denial of his petition for writ of

habeas corpus violated his Fifth and Fourteenth Amendment rights.  ECF

No. 1 at 17.  He argues in his § 2254 petition that the trial court lacked

jurisdiction and that his constitutional rights were violated because he was

not given <u>Miranda</u> rights.[13]  *Id.*  He expands on this argument in his reply in

this Court, arguing that the trial court lacked subject matter jurisdiction to

convict and sentence him due to failure to meet the speedy trial deadlines

of Florida Rule of Criminal Procedure 3.191, which rendered his judgment

void.  ECF No. 23 at 42; *see also* Ground 5 *supra.*

Petitioner raised these claims in a petition for writ of habeas corpus

filed in the circuit court.  Ex. II at 3, 7.  The petition was denied by order

entered December 21, 2015, in which the court found the claims were not

properly raised in a habeas petition, citing <u>Baker v. State</u>, 878 So. 2d 1236,

1242 (Fla. 2004) (holding that a habeas petition cannot be used as a

substitute for post-conviction relief under Rule 3.850 or to seek a second

appeal or litigate issues that could have been or were raised on direct

---

[13] No statement by Petitioner to investigating officers was admitted into evidence.

appeal).  The trial court held that to the extent Petitioner should have raised the claims in a Rule 3.850 motion, they are untimely because the mandate affirming his convictions was issued on February 13, 2013.  Ex. II at 15. The trial court also held that the claims were successive in that Petitioner's earlier <u>Miranda</u> claim and speedy trial claim were found procedurally barred by order of January 21, 2015, which was affirmed on appeal.[14]  *Id.* (citing order at Ex. W at 16).

Petitioner appealed the denial of his petition for writ of habeas corpus and the state district court of appeal affirmed on July 13, 2016.  Ex. LL. *See* <u>Cirota v. State</u>, 197 So. 3d 92 (Fla. 1st DCA 2016) (mem.) (noting that Petitioner had filed seven meritless appeals and cautioning that additional frivolous post-conviction appeals or petitions may result in sanctions).

Precedent holding that a habeas petition may not be used to raise claims that could and should have been brought on direct appeal or in a

---

[14] On August 27, 2014, Petitioner filed a "Notice of Void Judgment and Demand for Discharge" in the trial court challenging the court's jurisdiction to have prosecuted him based on the speedy trial issue.  Ex. W at 1-4. He filed a "Supplemental Postconviction Claim" on December 1, 2014, raising the claim that he should be discharged from his conviction because, when he was first taken into custody, he was not apprised of his <u>Miranda</u> rights.  Ex. W at 8-14.  On January 21, 2015, the circuit court denied his notice of void judgment and supplemental claim by "Order Denying Postconviction Relief."  Ex. W at 16-17.  The court found that the claims were claims that should have been raised in the trial court or on direct appeal and were successive claims that were procedurally barred.  *Id.* at 16.  Petitioner appealed to the First District Court of Appeal, which affirmed per curiam without discussion on April 23, 2015.  Ex. Z. The mandate was issued on June 24, 2015.  *See* <u>Cirota v. State</u>, 166 So. 3d 768 (Fla. 1st DCA 2015) (table).

timely, authorized post-conviction motion are firmly established and regularly followed in Florida.  The Eleventh Circuit has concluded that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under applicable law.  <u>LeCroy v. Sec'y, Fla. Dep't of Corr.</u>, 421 F.3d 1237, 1260 n.25 (11th Cir. 2005) (citing <u>Whiddon v. Dugger</u>, 894 F.2d 1266, 1267-68 (11th Cir. 1990)).

Further, whether the trial court lost jurisdiction pursuant to a violation of the timeframes in Florida Rule of Criminal Procedure 3.191 is a state law issue which was decided adversely to Petitioner by the state courts.  The Eleventh Circuit has explained that "[t]here are three sources of speedy trial rights for criminal defendants: (1) the Sixth Amendment to the U.S. Constitution; (2) the federal Speedy Trial Act; and (3) state speedy trial rules."  <u>Sneed v. Fla. Dep't of Corr.</u>, 496 F. App'x 20, 24 (11th Cir. 2012) (unpublished).  The federal Speedy Trial Act does not apply to state court proceedings. *Id.* (citing <u>United States v. Bell</u>, 833 F.2d 272, 277 (11th Cir. 1987)).  "These [state speedy trial] rules are not controlling, however, because they are not based on clearly established federal law, having been promulgated by Florida and not the U.S. Supreme Court." *Id.*  "A violation of Florida's speedy trial rules does not 'go to the fundamental fairness of

the trial' so that it is cognizable in a § 2254 petition." *Id.* (quoting Davis v. Wainwright, 547 F.2d 261, 264 (5th Cir. 1977)).

Petitioner presented this speedy trial jurisdictional claim to the state courts solely as a state law issue. Any allegation of violation of federal rights in this Court does not convert his state law issue into a claim that is cognizable in § 2254 federal habeas proceedings. "[F]ederal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (citing Pulley v. Harris, 465 U.S. 37, 41 (1984)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." McGuire, 502 U.S. at 67-68. As for his claim based on Miranda,[15] Petitioner provided no factual basis or legal authority to show that failure to give proper Miranda warnings, even if true, deprived the state court of jurisdiction or that there was any constitutional violation concerning his Miranda rights at his trial. The State did not place any custodial statement into evidence.

Petitioner has not demonstrated that the state courts' adjudication of this claim was contrary to or an unreasonable application of any federal law

---

[15] Miranda v. Arizona, 384 U.S. 436 (1966).

as determined by the Supreme Court or an unreasonable determination of the facts.  Petitioner has not demonstrated entitlement to habeas relief and Ground 15 should be denied.

### Ground 16: Denial of Notice of Void Judgment

Petitioner contends in his last ground that the trial court erred and deprived him of Due Process and Equal Protection by treating his Notice of Void Judgment and Demand for Discharge as successive and denying it without a hearing.  ECF No. 1 at 18.  He argues that the court abused its discretion by treating his " 'NOTICE' proving the judgment void" as a successive Rule 3.850 motion.  *Id.*  In his reply, Petitioner further argues that his jurisdictional challenge can be raised at any time.  ECF No. 25-1 at 2.

As noted earlier, on August 27, 2014, Petitioner filed a "Notice of Void Judgment and Demand for Discharge" in the trial court based on the speedy trial issue.  Ex. W at 1-4.  On December 1, 2014, Petitioner filed a "Supplemental Postconviction Claim," raising the additional claim that he should be discharged from his conviction because, when he was first taken into custody, he was not apprised of his Miranda rights.  Ex. W at 8-14.

On January 21, 2015, the circuit court denied his notice of void judgment and supplemental claim by "Order Denying Postconviction

Relief."  Ex. W at 16-17.  The court found that the claims were successive post-conviction claims that were procedurally barred because they should have been raised at trial or on direct appeal.  *Id.* at 16.  Petitioner appealed the denial to the First District Court of Appeal, which affirmed per curiam without discussion on April 23, 2015.  Ex. Z.  The mandate was issued on June 24, 2015.  *See* Cirota v. State, 166 So. 3d 768 (Fla. 1st DCA 2015) (table).

The trial court's order explained that Petitioner's conviction and sentence had been affirmed on appeal almost two years earlier, that a Rule 3.850 motion had been filed and denied, and that denial had been affirmed on appeal.  In neither his direct appeal of his convictions and sentence nor his earlier Rule 3.850 did Petitioner raise the claims he raised in the Notice of Void Judgment and Motion for Discharge and in his Supplemental Postconviction Claim.  The two filings were properly treated as successive Rule 3.850 claims raising issues collateral to the judgment and sentence. Florida Rule of Criminal Procedure 3.850 provides that a post-conviction motion may properly raise as grounds a claim that the court did not have jurisdiction to enter the judgment or sentence or that the judgment is otherwise subject to collateral attack.  Fla. R. Crim. P. 3.850(a)(2), (6).  The rule provides that a second or successive motion is an "extraordinary

pleading" and may be dismissed if it alleges new grounds that could have been raised in a prior motion.  Fla. R. Crim. P. 3.850(h)(2).  The rule expressly states that it does not authorize relief based on grounds that could have or should have been raised at trial and if preserved on direct appeal of the judgment and sentence.  Fla. R. Crim. P. 3.850(c)(7).  As noted earlier, the Eleventh Circuit has concluded that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds that preclude federal habeas consideration.  LeCroy, 421 F.3d at 1260 & n.25).

Petitioner has not provided any basis to find that the trial court erred in treating the Notice of Void Judgment and Demand for Discharge and the Supplemental Postconviction Claim as successive and untimely post-conviction claims under Rule 3.850 and summarily denying it.  Moreover, Petitioner's Miranda claim would be without merit because no custodial statements of Petitioner were admitted at trial, and his state law claim based solely on Florida's speedy trial rule is not cognizable in this § 2254 proceeding.  For all these reasons, Ground 16 should be denied.

## Conclusion

Based on the foregoing, Petitioner John H. Cirota is not entitled to federal habeas relief. Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to

whether a certificate should issue by objections to this Report and

Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed.

R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not

otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the

§ 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate

of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on September 20, 2018.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not**

<u>**control**</u>.  **If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.**  ***See*** **11th Cir. R. 3-1; 28 U.S.C. § 636.**